**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION**

| | | |
|---|---|---|
| CHRISTINE SAENZ, STEVEN | § | |
| SAENZ, AND BRANDON ALANIZ | § | |
| Plaintiffs, | § | |
| | § | |
| vs. | § | CIVIL ACTION NO. _____ |
| | § | |
| CITY OF ROSENBERG, DUSTIN | § | |
| STROUD, ERIK MARMOL, SUNI | § | |
| ERAZO, AND JOHN DOE, | § | |
| Defendants. | § | |

**PLAINTIFFS' ORIGINAL COMPLAINT**

TO THE HONORABLE UNITED STATES DISTRICT COURT:

COME NOW, CHRISTINE SAENZ (hereinafter referred to as "Mrs. Saenz"), STEVEN SAENZ (hereinafter referred to as "Mr. Saenz") and BRANDON ALANIZ (hereinafter referred to as "Mr. Alaniz"), referred to collectively as Plaintiffs, complaining of CITY OF ROSENBERG (hereinafter "Rosenberg" or "City of Rosenberg"), DUSTIN STROUD, INDIVIDUALLY (hereinafter referred to as "Defendant Stroud" or "Officer Stroud"), ERIK MARMOL INDIVIDUALLY (hereinafter referred to as "Defendant Marmol" or "Officer Marmol"), SUNI ERAZO INDIVIDUALLY (hereinafter referred to as "Defendant Erazo" or "Officer Erazo"), and JOHN DOE INDIVIDUALLY (hereinafter referred to as "Defendant Doe" or "Officer Doe"), and for cause of action would respectfully show unit this Honorable Court as follows:

## I.    NATURE OF THE CASE

1.    This is a civil action arising under the United States Constitution, particularly under the provisions of the Fourth Amendment to the Constitution of the

United States, and under federal law, particularly the Civil Rights Act, Title 42 of the United States Code § 1983, seeking damages against Defendants for committing acts, under color of law, with the intent and for the purpose of depriving Plaintiffs of rights secured under the Constitution and laws of the United States.

2.      Plaintiffs also seek redress under Texas common law for Assault by Infliction of Bodily Injury, False Imprisonment by False Arrest, and Malicious Prosecution.

## II.      PARTIES

3.      Plaintiff, CHRISTINE SAENZ, is a citizen of the United States currently residing in Fort Bend County, Texas.

4.      Plaintiff, STEVEN SAENZ, is a citizen of the United States currently residing in Fort Bend County, Texas.

5.      Plaintiff, BRANDON ALANIZ, is a citizen of the United States currently residing in Fort Bend County, Texas.

6.      Defendant, CITY OF ROSENBERG, is a municipality in Fort Bend County, Texas, which may be served by delivering a copy of the summons and complaint to the Mayor of the City of Rosenberg, Cynthia A. McConathy, or the Mayor Pro Tem of the City of Rosenberg, Amanda J. Barta at 2110 4th St., Rosenberg, TX 77471.

7.      Defendant, DUSTIN STROUD, is a resident of Texas employed by the City of Rosenberg.  He may be served by delivering a copy of the summons and complaint to him personally at his place of employment at 2120 4th St., Rosenberg, TX 77471.  At all relevant times DUSTIN STROUD was acting under color of law.  To wit:

he was using authority given to him by the City of Rosenberg and the State of Texas to act as a law enforcement officer in Rosenberg, Texas.

8.      Defendant, ERIK MARMOL, is a resident of Texas employed by the City of Rosenberg.  He may be served by delivering a copy of the summons and complaint to him personally at his place of employment at 2120 4th St., Rosenberg, TX 77471.  At all relevant times ERIK MARMOL was acting under color of law.  To wit: he was using authority given to him by the City of Rosenberg and the State of Texas to act as a law enforcement officer in Rosenberg, Texas.

9.      Defendant, SUNI ERAZO, is a resident of Texas employed by the City of Rosenberg.  She may be served by delivering a copy of the summons and complaint to her personally at her place of employment at 2120 4th St., Rosenberg, TX 77471.  At all relevant times SUNI ERAZO was acting under color of law.  To wit: she was using authority given to her by the City of Rosenberg and the State of Texas to act as a law enforcement officer in Rosenberg, Texas.

10.      Defendant, JOHN DOE, is a resident of Texas employed or formerly employed by the City of Rosenberg.  He may be served by delivering a copy of the summons and complaint to him personally at his place of employment at 2120 4th St., Rosenberg, TX 77471.  At all relevant times JOHN DOE was acting under color of law. To wit: he was using authority given to him by the City of Rosenberg and the State of Texas to act as a law enforcement officer in Rosenberg, Texas.

### III.      JURISDICTION

11.      This action is brought pursuant to 42 U.S.C. § 1983, and the Fourth and Fourteenth Amendments to the United States Constitution. The Court has jurisdiction of

3

this action under 28 U.S.C. §§ 1331 and 1343. This Court also has supplemental jurisdiction to hear the state claims set forth in this complaint pursuant to 28 U.S.C. § 1367.

## IV.    VENUE

12.    Venue is proper in this district under 28 U.S.C. § 1391(b) because the acts, events or omissions giving rise to this claim occurred in Fort Bend County, Texas, which falls within the United District Court for the Southern District of Texas, Houston Division.

## V.    FACTUAL BACKGROUND

### A.    The Arrests

13.    On July 30, 2014, Ashley Williams phoned the Rosenberg Police Department and complained that her mother, Plaintiff Christine Saenz, with whom she had been arguing, refused to return Mrs. Williams' five year old son, E. Z. who Christine Saenz and Plaintiff Steven Saenz had been babysitting so that Mrs. Williams could go on her honeymoon.

14.    During the course of the argument, which was taking place by mobile phone, Mrs. Saenz received a call from someone who identified himself as a City of Rosenberg police officer.  He instructed Mrs. Saenz to immediately drop E. Z. off at the Rosenberg police station.  Mrs. Saenz told the officer she would do so.  The Saenz' immediately took E. Z. to the police station and dropped him off without incident.

15.    Prior to dropping E. Z. off, Mrs. Saenz asked Mrs. Williams to return to Mrs. Saenz a car and two cell phones Mrs. Saenz had purchased for Mrs. Williams to use. Mrs. Williams refused to bring the car or the cell phones to the police station.

16.     The Saenz' and Mrs. Saenz' son, Joe Zepeda (who met them at the police station), then followed Mrs. Williams back to her home.  Mrs. Saenz planned on having Mr. Zepeda speak with Mrs. Williams about returning her car and cell phones.  The Saenz' parked their truck on the opposite side of the street from Mrs. Williams' house. The Saenz' and Mr. Zepeda arrived at about the same time.  At or near that time, several Rosenberg police officers also began arriving.  Mrs. Williams had apparently made another call to the Rosenberg Police Department complaining about Mrs. Saenz.

17.     A female police officer (later identified as Defendant Suni Erazo) was the first officer on the scene.  Officer Erazo initially approached Mr. Zepeda's girlfriend, Patricia Wilson, who was in her driveway taking her children out of her truck, and asked her if she had been involved in a physical altercation.  Ms. Wilson explained to Officer Erazo that there had been no physical altercation and that she was not involved in the argument between Mrs. Saenz and Mrs. Williams.

18.     At about that time, Mrs. Williams came out of her home.  Officer Erazo spoke with her in or near her driveway.  Mrs. Williams explained why she had called the police.  Officer Erazo asked Mr. Williams if Mrs. Saenz had hit her.  Mrs. Williams immediately responded, "No, no, no . . . ."  and went on to explain there had been nothing physical.  Officer Erazo, then radioed dispatch and reported, "It's not physical; they haven't been physical."  Officer Erazo then told the dispatcher that the other officers could disregard the call if they chose.

19.     During this time the Saenz' had been parked across the street from Mrs. Williams' home, waiting for Mr. Zepeda to speak with Mrs. Williams about returning the

car and cell phones.  They had not gotten out of their truck or approached Mrs. Williams'

or attempted to make any contact with her whatsoever and were not violating any law.

20.     In the meantime, Officer Erik Marmol (who was in his first year on the

force) arrived on the scene.  Officer Erazo explained briefly to Officer Marmol that Mrs.

Saenz had not made any contact with Mrs. Williams.  Officers Erazo and Marmol then

approached the driver's side of the Saenz' truck.  Mrs. Saenz was seated on the

passenger's side.  The officers asked Mrs. Saenz (from the driver's side) what she and

Mr. Saenz were doing there.  She explained they had come to retrieve her car.

21.     Officer Erazo asked, "Can you step out of the vehicle?"  Mrs. Saenz

replied, "Sure."  At about the same time, Officer Marmol gave a direct instruction for her

to "step out."  Because Mrs. Saenz did not immediately do so, Officer Marmol raced

around to the passenger's side, opened the door, and pulled Mrs. Saenz out of the truck

by her right arm.  He then instructed her to move to the other side of the truck.  Mrs.

Saenz stated she did not want to go to the other side of the truck because she did not wish

to see Mrs. Williams.  Officer Marmol then told her she could stay where she was.

22.     Officer Marmol then began admonishing her for being at the location.  He

said to Mrs. Saenz, "You guys are walking a very fine line."  Mrs. Saenz continued

explaining to Officer Marmol that she was there to pick up her car—that her name was on

the title.  Officer Marmol began yelling at her, "It does not matter!"

23.     While Officer Marmol and Mrs. Saenz were arguing, Mr. Saenz got out of

the truck and walked around the back of the truck to the passenger side.  Officer Erazo

noticed a small pocketknife Mr. Saenz had in a case on his hip and asked him to give it to

her.  He did so without incident.

24.     In dash cam recordings, Mr. Saenz can be heard explaining to the officers that Mrs. Saenz has cancer.  His concern was that by needlessly manhandling her, Officer Marmol was going to hurt her upper chest area where her oncologist had implanted a device known as a "port-o-cath" for the purpose of administering chemotherapy drugs.

25.     As Mr. Saenz approached the area where Mrs. Saenz and Officer Marmol were standing, Officer Marmol said, "I need you to back off . . . hey, back off, I'm speaking to her."  Officer Dustin Stroud, who had just approached the scene, put his hand on Mr. Saenz chest and told him to step back.  Mr. Saenz complied.  However, for unknown reasons and without justification, Officer Stroud knocked Mr. Saenz to the ground, got on top of him and began pummeling him in the face and head, bloodying his face.   Officer Marmol participated in the take-down, which knocked Mr. Saenz temporarily unconscious and left him disoriented.

26.     Officer Marmol then threw the fifty-one year old Mrs. Saenz to the ground and began arresting her.  Out of concern for his parents, Mr. Zepeda approached.  Officer Marmol got off of Mrs. Saenz, drew his taser, pointed it at Mr. Zepeda and ordered him to the ground.  Mr. Zepeda complied.  In the meantime, Officer Erazo handcuffed Mrs. Saenz.

27.     Officer Stroud had placed himself on top of Mr. Saenz, who was face down on the ground with his arms underneath his body.  After Officer Erazo handcuffed, Mrs. Saenz she began assisting Officer Stroud, who placed his knee on the back of Mr. Saenz' neck, pressing down with his full body weight. Officer Erazo pulled Mr. Saenz' left arm from underneath his body.  Mr. Saenz placed that arm behind his back so that Officer Erazo could handcuff him.

7

28.     Mrs. Saenz, who had been lying on the ground, stood up and began pleading with Officer Stroud to stop hitting her husband.  Officers Marmol and Stroud began yelling at her to get on the ground.   Appearing disoriented, she did not immediately do so.  Even though she was obviously not trying to evade arrest, was in no way interfering with the arrest of Mr. Saenz and was handcuffed with her hands behind her back, Officer Stroud rushed her, grabbed her by the neck, kicked her legs out from under her and slammed her to the ground head first, knocking her unconscious.

29.     Having just seen his wife body-slammed to the ground and knocked unconscious, Mr. Saenz began moving towards her.  Officer Stroud turned his attention back to Mr. Saenz pummeling him in the face repeatedly.  During this time, Mr. Saenz was in a defensive posture, with his arms around his face trying to avoid being struck.  Officer Stroud pulled Mr. Saenz' arms apart for the purpose of striking him again in the face.   Officers Stroud and Erazo then handcuffed Mr. Saenz.

30.     Mr. Alaniz, who had been parked nearby during the entirety of the encounter got out of his vehicle when Officer Stroud attacked Mr. Saenz and began videoing the incident (the "Alaniz Video").   Mr. Alaniz approached the area but maintained a safe distance and never interfered with the officers.  The officers were aware of his presence during the course of the incident and knew he was making a video.  Initially, they simply ignored him.

31.     After both Mr. and Mrs. Saenz had been handcuffed and were sitting on the ground waiting for medical treatment, Mr. Alaniz told officer Erazo that his mother needed to be checked out.  She had clearly been injured.  The officers continued ignoring Mr. Alaniz.

32.     More than a minute after the Saenz' had been handcuffed and nearly three minutes into the Alaniz Video, Officer Erazo said to Mr. Alaniz, "You need to step back."  Mr. Alaniz immediately began back-peddling.  Officer Erazo told him, "Go on that side of the road right now [pointing to the other side of the street] . . . on that side of the road."  Mr. Alaniz continued backing away.  While he did not move to the other side of the street, he did move far enough away so that the officers apparently were no longer concerned about his presence.  They continued ignoring him.  Mr. Alaniz positioned himself so that he would have a clear view of the scene and continued making the video.

33.     Five and a half minutes into the video, another officer (Cody Dailey) approached Mr. Alaniz and instructed him to move to the other side of the street.  While Mr. Alaniz was argumentative with Officer Dailey, he immediately began moving to the other side of the street.

34.     Once Mr. Alaniz was on the other side of the street, Officer Dailey told him that if he approached the scene, he would be arrested.  Mr. Alaniz asked Officer Dailey whether he could stay where he was standing.  Officer Dailey confirmed that he could.  The officers again began ignoring him.

35.     In spite of the fact that Mr. Alaniz complied with the officers instructions to move away and at no time (as evidenced by their lack of concern for his presence) did he interfere with them or threaten them in any way, Officer Doe arrested him for interfering with Officer Erazo.

36.     Mr. and Mrs. Saenz were transported to the hospital where they were treated for their injuries and subsequently transported to jail.  After they were released from jail a few days later, they were transported back to the hospital.  Mr. Saenz was

diagnosed with a concussion and a broken nose.  Mrs. Saenz was diagnosed with a concussion.

**B.    The Post-Arrest Investigation: Officer Erazo Repeatedly Gives False and Misleading Information to Other Officers**

37.    In the moments after the arrest, as other officers arrived on the scene, Officer Erazo began telling a story drastically different from the one her own dash cam recording and the Alaniz Video tell.

38.    In spite of the fact that, in response to a question by Officer Erazo, Mrs. Saenz can be heard on the dash cam recording calmly stating, "We need to pick up our vehicle," and, in response to her request that she step out of the car, Mrs. Saenz calmly said, "Sure," Officer Erazo alleged to other officers, "She started shouting at me about a car."

39.    In addition to being contradicted by the recording, this allegation does not square with the fact that after Mr. and Mrs. Saenz were both out of the truck, Officer Erazo calmly asked Mr. Saenz, "Can I get that knife from you?"  As stated, Mr. Saenz handed his pocket knife to Officer Erazo without incident.

40.    Officer Erazo also stated that, after Mrs. Saenz was handcuffed, Mr. Saenz continued resisting and fighting and that he "threw punches at Stroud several times."  To the contrary, the Alaniz Video shows Officer Stroud on top of Mr. Saenz who is face down on the ground in the prone position during the entire time Officer Erazo is handcuffing Mrs. Saenz.  Mr. Saenz was still in the prone position with both arms pinned underneath his body when Officer Erazo began assisting Officer Stroud with handcuffing him.  The Alaniz Video shows Mr. Saenz voluntarily putting his left arm behind his back to allow Officer Erazo to handcuff him.

41.     In addition to being contradicted by the irrefutable video evidence, Officer Erazo's embellishment about Mr. Saenz fighting and throwing punches makes no sense in light of Officer Stroud's actions.  On the one hand, she stated that Mr. Saenz continued fighting with Officer Stroud and throwing punches.  On the other hand, Officer Stroud got off of Mr. Saenz and turned his back to him when he turned his aggression towards the handcuffed Mrs. Saenz.  At this point, he left Officer Erazo (a petite female officer) alone with Mr. Saenz who, according to Officer Erazo, was still resisting, fighting and throwing punches at Officer Stroud.

42.     Nowhere in the Alaniz Video is Mr. Saenz seen throwing a punch.  To the contrary, it is Officer Stroud who repeatedly throws punches to the head and face of the fifty-nine year old Mr. Saenz.

43.     The most disturbing of Officer Erazo's embellishments is the one she tells about Mrs. Saenz to apparently justify the body-slam administered by Officer Stroud.  According to Officer Erazo, after Mrs. Saenz was handcuffed and on the ground, "She got up, cuffed, and tried to come back at us."  While Mrs. Saenz did stand up appearing disoriented, the Alaniz Video clearly shows she never moved from the position she was in.

44.     In light of the violence with which Officer Stroud threw Mrs. Saenz to the ground and not knowing how seriously she may have been injured, perhaps Officer Erazo felt the need to embellish the story to protect Officer Stroud from any negative consequences that might result from his unjustified violence towards Mrs. Saenz. Regardless, the irrefutable video evidence demonstrates Officer Erazo's embellished version of what happened is simply not true.

45.     Finally, to justify the arrest of Mr. Alaniz, Officer Erazo gave progressively embellished accounts of his actions in relation to taking the video.  During the investigation she initially stated she told Mr. Alaniz to move to the other side of the street "three or four times."  Later she stated she told him to move to the other side of the street "five times."  She makes this allegation repeatedly.  However, the irrefutable video evidence shows she only gave Mr. Alaniz one instruction to move to the other side of the street.

46.     In addition, Officer Erazo repeatedly stated that Mr. Alaniz "instigated" the situation.  In fact Mr. Alaniz was in his vehicle when Officer Stroud initiated the aggression.   And, contrary to her claims of "instigation," Mr. Alaniz can be heard repeatedly trying to diffuse the situation by telling his parents and brother to "stay down."

**C.     The Charges and Subsequent Dismissals**

47.     On July 30, 2014 Christine Saenz was charged with felony assault of a public servant for allegedly assaulting and causing bodily injury to Officer Erazo. On January 19, 2016, the Fort Bend County District Attorney filed a motion asking the Court to dismiss the charge "In the interest of justice."  The Court dismissed the charge on that day.

48.      On July 30, 2014 Steven Saenz was charged with felony assault of a public servant for allegedly assaulting and causing bodily injury to Officer Stroud and misdemeanor resisting arrest. On January 13, 2016, the Fort Bend County District Attorney filed a motion asking the Court to dismiss the felony assault charge "In the interest of justice."  The Court dismissed the charge on that day.  On March 29, 2016, Mr. Saenz pled guilty to the misdemeanor resisting arrest charge.

49.     On July 30, 2014 Brandon Alaniz was charged with interfering with a peace officer in the performance of her duties for allegedly interfering with Officer Erazo. On August 18, 2015, the Fort Bend County District Attorney filed a motion asking the Court to dismiss the charge for insufficient evidence.  The charge was dismissed that day.

## VI.     CAUSES OF ACTION

### D.     § 1983: Excessive Force/Assault by Infliction of Bodily Injury

50.     Plaintiffs hereby adopt, incorporate, restate and re-allege paragraphs 1 through 49, inclusive, with regard to all causes of action. In this section, "Defendant" or "Defendants" refers only to Defendants Stroud, Marmol, Erazo and Doe.

51.     Plaintiffs plead that Defendants Stroud and Marmol used excessive force in the course of their illegal seizure and arrest of Mr. Saenz and Mrs. Saenz in violation of the Fourth Amendment and its "reasonableness" standard.  Plaintiffs assert Mr. Saenz and Mrs. Saenz were unlawfully assaulted by Defendant Stroud. Said actions resulted directly from the use of force that was clearly excessive to the need, and the use of force was objectively unreasonable. To establish Defendant Stroud violated their constitutional rights to be free from excessive force, Plaintiffs must show:

  a. An injury;

  b. Which resulted from the use of force that was clearly excessive to the need; and

  c. The excessiveness of which was objectively unreasonable.

52.     In the Alaniz Video, the first image of Mr. Saenz shows his face bloodied from the initial pummeling Officer Stroud delivered, and shows him falling forward onto the ground with Officer Stroud on his back.   Whatever their reasons for arresting Mr.

13

Saenz without warning or reasonable opportunity to comply with their commands, knocking Mr. Saenz to the ground and punching him on and about the face and head repeatedly was objectively unreasonable.

53.     Likewise, when Officer Stroud turned his aggression to the handcuffed and disoriented Mrs. Saenz, his grabbing her by the neck, kicking her legs out from under her and slamming her to the ground head first hard enough to knock her unconscious, and hard enough that the impact can be heard in the video was objectively unreasonable, regardless of his reasons for wanting her on the ground.

54.     When he returned to Mr. Saenz, Officer Stroud's repeated punches to the face and pulling Mr. Saenz hands away from his face so he could continue striking him was objectively unreasonable.

55.     As a result of this unreasonable use of force, Mr. and Mrs. Saenz were both transported to the hospital to be treated of their aforementioned injuries.

56.     Officers Stroud's and Marmol's actions were "objectively unreasonable" in light of the facts and circumstances confronting the officer without regard to their underlying intention or motivation, including that Plaintiffs were unarmed, not committing a crime and posed no threat or danger to the police.

57.     In addition to the aforementioned civil rights violations, the excessive force used against Plaintiffs constitutes Assault by Infliction of Bodily Injury under the laws of the State of Texas.

**E. § 1983: Unreasonable Search and Seizure/False Imprisonment by False Arrest**

58.     Plaintiffs hereby adopt, incorporate, restate and re-allege paragraphs 1 through 57, inclusive, with regard to all causes of action.  In this section, "Defendant" or "Defendants" refers only to Defendants Stroud, Marmol, Erazo and Doe.

        a.     <u>Seizure of the Plaintiffs</u>

59.     Mr. and Mrs. Saenz and Brandon Alaniz were unlawfully detained and arrested on July 30, 2014 without reasonable suspicion or probable cause to believe any of them had committed a crime and without a warrant. The Fourth Amendment prohibits the police from carrying out unreasonable seizures. An arrest is a "seizure" under the Fourth Amendment.

60.     Under the Fourth Amendment a police officer may detain someone only when he has reasonable suspicion the person has committed a crime.  Officer Erazo initially and correctly determined that neither Mr. nor Mrs. Saenz had committed a crime when she first spoke with Mrs. Williams.  Officer Erazo then explained this to Officer Marmol when he arrived on the scene.  In addition, both Officers Marmol and Stroud heard Officer Erazo when she radioed that there had been no physical altercation and that they could disregard the call.

61.     In spite of this, Officer Marmol detained Mrs. Saenz when he demanded that she step out of the vehicle in such a manner that lead her to reasonably believe she was not free to leave.  This detention was without reasonable suspicion and illegal.

62.     Officers Stroud and Marmol arrested Mr. Saenz when they knocked him to the ground and Officer Stroud jumped on top of him for ostensibly being too close to the police officers and/or not moving away far enough fast enough.   Officer Erazo

participated in the arrest.  However, Mr. Saenz had not committed any crime, had not threatened the officers in any way, and the officers were not investigating any crime, notwithstanding that Officer Marmol had illegally detained Mrs. Saenz.  The officers did not have reasonable suspicion or probable cause to detain and arrest Mr. Saenz.

63.     Officers Marmol and Erazo arrested Mrs. Saenz when Officer Marmol knocked her to the ground and Officer Erazo subsequently handcuffed her.  Neither Officer Marmol nor Officer Erazo had probable cause to arrest Mrs. Saenz.

64.     Officer Doe did not have probable cause to arrest Mr. Alaniz.  Had Officer Doe conducted a reasonable investigation into Officer Erazo's allegations by reviewing the Alaniz Video on the scene, he would have discovered that, contrary to what Officer Erazo may have told him, Mr. Alaniz did not instigate anything, in no way interfered with the illegal arrest and beating of his parents, and promptly complied with Officers Erazo's and Dailey's commands when they asked him to move away.

65.     Moreover, officers on the scene can be heard discussing whether they thought they could legally seize and search his mobile phone without arresting Mr. Alaniz and without a warrant.  While at least one officer stated he believed they could confiscate the phone without an arrest and without a warrant, a consensus emerged that Mr. Alaniz should be arrested.  As the discussion went on, Officer Erazo's embellishments of Mr. Alaniz' conduct in relation to making the video progressed.

66.     In addition to the aforementioned violations of their civil rights, the illegal arrests of Plaintiffs constitute False Imprisonment by False Arrest under the laws of the State of Texas.

b.    Seizure and Search of the Phone/Video

67.    In *Riley v. California*, 573 U.S. ___ (2014) (decided on June 25, 2014) the United States Supreme Court held that police generally may not, without a warrant, search digital information on a cell phone seized from an individual who has been arrested.   There are exceptions to this rule when a warrantless search is conducted incident to a lawful arrest.

68.    As discussed, the arrest of Mr. Alaniz was illegal.   Thus, the subsequent warrantless seizure and search of his phone was also illegal and in violation of the Fourth Amendment.

**F.    Malicious Prosecution**

69.    Plaintiffs hereby adopt, incorporate, restate and re-allege paragraphs 1 through 68, inclusive, with regard to all causes of action.   In this section, "Defendant" or "Defendants" refers only to Defendants Stroud, Marmol, Erazo and Doe.

70.    Criminal prosecutions were commenced against the Plaintiffs.   Defendants initiated or procured these prosecutions.

71.    The prosecution for felony assault of a public servant causing bodily injury against Mrs. Saenz for allegedly assaulting and causing bodily injury to Officer Erazo was terminated in Mrs. Saenz' favor.   Mrs. Saenz was innocent of the charge.

72.    The prosecution for felony assault of a public servant causing bodily injury against Mr. Saenz for allegedly assaulting and causing bodily injury to Officer Stroud was terminated in Mr. Saenz' favor.   Mr. Saenz was innocent of the charge.

73.    The prosecution for interfering with the duties of a police officer against Mr. Alaniz was terminated in his favor.   Mr. Alaniz was innocent of the charge.

74.     Defendants did not have probable cause to initiate or procure the aforementioned prosecutions.  There were no facts or circumstances present that would have created a belief in a reasonable person, acting on the facts within her knowledge, that the Saenz' or Mr. Alaniz were guilty of any of the crimes with which they were charged.

75.     Specifically, Defendants were present during all relevant times, were fully aware that neither Mr. nor Mrs. Saenz assaulted anybody and were fully aware that none of them suffered any bodily injury.  In fact, in response to a question from another police officer about whether she had been injured, Officer Erazo clearly stated, "I don't feel anything."

76.     With regard to the charge against Mr. Alaniz, Defendants were present during all relevant times and were aware that Mr. Alaniz had not in any way interfered with their illegal detention and arrest of Mr. and Mrs. Saenz.

77.     Defendants acted with malice in initiating or procuring the charges in that they were motivated by a purpose other than bringing guilty persons to justice. Specifically, and upon information and belief, their motive was to cover up the unjustified and illegal violence inflicted upon Mr. and Mrs. Saenz by Officers Stroud and Marmol by alleging the Saenz' assaulted them, thus creating a "justification" for the violence.

78.     With regard to the charge against Mr. Alaniz, and upon information and belief, Defendants' motive was to create a pretext for a warrantless seizure of the video he had made so that Defendants could conform their post-arrest stories to what the video showed.

**G.    Municipal Liability Under 42 U.S.C. § 1983 and the Fourth Amendment**

79.    Plaintiffs hereby adopt, incorporate, restate and re-allege paragraphs 1 through 78, inclusive, with regard to all causes of action.

80.    The elements of a cause of action under § 1983 against a governmental entity are:

      a.    Plaintiff is deprived of rights under the United States Constitution;

      b.    Such deprivation is caused by a person acting under color of state law;

      c.    The governmental entity adopted a persistent, widespread  practice of officials or employees of the governmental entity which, though not authorized or officially adopted and promulgated, the policy is so common and well settled as to constitute a custom that fairly represents policy of the governmental entity; and

      d.    The promulgation of the policy was done so with deliberate indifference to known or obvious consequences that violations of constitutional rights would occur and the unconstitutional policy is the moving force behind the deprivation of the Plaintiff's rights.

81.    At all relevant times Defendants Stroud, Marmol, Erazo and Doe were police officer employees of the City of Rosenberg.  Rosenberg provided these employees and agents with official badges, identification, and uniforms which designated and described them as Rosenberg police officers.

82.    At all relevant times, Defendants Stroud, Marmol, Erazo and Doe, separately and in concert, acted under color of law, as well as under the color of policies, practices and customs of Rosenberg.  Each of these Defendants deprived Plaintiffs of the rights, privileges, and immunities secured to Plaintiffs by the Fourth Amendment to the United States Constitution and the laws of the United States.

83.    Upon information and belief, with regard to its policing policies, Rosenberg adopted and promulgated a widespread practice of excessive use of force,

covering up such excessive use of force, and illegal detentions and arrests that, although not officially adopted and promulgated, is so common and well settled as to constitute a custom that fairly represents the policy of Rosenberg.

84.     This practice is highlighted in part by the actions of one of Rosenberg's policy makers—Assistant Police Chief Tracie Dunn.  Chief Dunn was indicted for Official Oppression in connection with the kicking of a handcuffed prisoner on or about May 3, 2015.[1]  The prosecution was based in part on a police station video showing Chief Dunn kicking the handcuffed prisoner.

85.     The fact that a Rosenberg policy-maker, who is responsible for setting the example for the conduct and professionalism of the police officers who work under her, engaged in this blatant and illegal use of excessive in full view of those same police officers demonstrates Rosenberg's deliberate indifference to the known and obvious consequences that violations of constitutional rights would occur.

86.     Moreover, Rosenberg police officers have a history of engaging in illegal use of excessive force, illegal arrests, and other acts of violence without apparent fear of consequences.

87.     On or about October 26, 2010, Rosenberg Police Officer Cullen Brady (who had arrived on the scene after the suspect had been shot and detained) stomped on the head of a robbery suspect three times as he lay on the ground suffering from a gunshot wound and handcuffed.  Officer Brady did this in full view of other police officers and with the knowledge that his actions were being recorded by a dash cam

---

[1] The charge was dropped in May 2016 because, according to the prosecutor, the complainant decided she did not want to cooperate with the prosecution.

recorder.   The facts and circumstances of this case are more fully set forth in Cause 4:12-cv-03160 on file in the United States District Court for the Southern District of Texas.

88.     On December 9, 2009, Rosenberg Police Officer Justin Pannell employed excessive force against a sixty-three year old former Richmond, Texas police officer who he had pulled over on an alleged traffic violation.   Officer Pannell, without justification, threw his victim to the ground then punched him in the shoulder with his fist when the victim asked why he was being arrested.   Officer Pannell pushed the victim's head onto the roadway then jerked him up when he was unable to stand up on his own.

89.     The victim was arrested and charged with a license plate violation and driving while intoxicated.   All charges were subsequently dropped.   Like the other incidents, Officer Pannell employed this illegal use of excessive force and conducted an illegal arrest apparently unconcerned about any consequences and with the full knowledge the incident was being recorded by his dash cam recorder.   The facts and circumstances of this case are more fully set forth in Cause 4:11-cv-04633 on file in the United States District Court for the Southern District of Texas.

90.     That a culture of violence and dishonesty is persistent and widespread in the Rosenberg Police Department is further illustrated by an incident in which, ironically, Officer Marmol himself was victimized.   Sometime in 2014 when Office Marmol was in training to qualify to be on the police department's SWAT team, another officer, as part of a bizarre and violent hazing ritual, fired what is known as a "less-lethal" bean bag round at Officer Marmol striking and seriously injuring him in the leg. The incident was recorded by a nearby camera.   Officers can be heard laughing after Officer Marmol screamed in pain.

91.     The attempted cover-up of the incident by members of the SWAT team (including Marmol's failure to promptly report the assault) was just as disturbing as the act of violence itself.  In an interview that aired on a local news station on July 23, 2014 (one week before the incident involving Plaintiffs), Rosenberg Police Chief Dallis Warren explained that the ring-leader of the incident, Lieutenant Aaron Slater failed to inform the Chief of Marmol's injury for two days, in spite of the fact Officer Marmol was unable to work because of the injury.  Chief Warren also said he was not initially told the truth, and that there were multiple discrepancies in the statements of the officers involved during the investigation of the assault.[2]

92.     As demonstrated by the actions of the individual defendants in this suit, the past actions of Rosenberg's police officers, and Chief Dunn's recent flagrant disregard for the constitutional rights of a handcuffed prisoner, Rosenberg's illegal practices are both widespread and persistent.

93.     Rosenberg is therefore responsible for the illegal actions of its police officers.

## VII.    REMEDIES

94.     Plaintiffs seek the following as damages:

a.      Actual damages, including general and special damages;

b.      Exemplary damages;

c.      Prejudgment and postjudgment interest;

d.      Reasonable and necessary attorney's fees, including statutory attorney's fees pursuant to 42 U.S.C. § 1988.

e.      Costs of court.

---

[2] At least four of the officers involved were disciplined for their roles in the incident but none were criminally charged.

**JURY DEMAND**

95.     Plaintiffs demand a trial by jury.

**PRAYER**

**WHEREFORE, PREMISES CONSIDERED**, Plaintiffs respectfully pray that the Defendants be summoned to appear and answer herein, and that upon a final hearing of the cause, judgment be entered for the Plaintiffs against Defendants, jointly and severally, for damages in an amount within the jurisdictional limits of the Court; together with pre-judgment interest at the maximum rate allowed by law; post-judgment interest at the legal rate, costs of court, attorney's fees; and such other and further relief to which the Plaintiffs may be entitled at law or in equity.

Respectfully submitted,

BLASINGAME WHITLEY

By: /s/ *Robert A. Whitley*
Robert A. Whitley
Texas Bar No. 24056522
SD No. 989230
12621 Featherwood Dr., Suite 282
Houston, Texas 77034
Tel. (281) 741-5225
Fax. (281) 741-9549
Email:  robert@whitlegal.com
Attorney for Plaintiffs